Matthew **ALDER**, # 246180, Petitioner,

v.

**Sherry BURT, Respondent,**

**No. CIV. 01–CV–40289–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 22, 2003.

Matthew Alder, Jackson, MI, pro se.

Brenda E. Turner, Janet Van Cleve, Michigan Dept. of Atty. Gen., Habeas Corpus Div., Lansing, MI, for Sherry Burt.

## OPINION AND ORDER

GADOLA, District Judge.

### I. Introduction

Matthew Alder, ("Petitioner"), presently confined at the State Prison of Southern Michigan in Jackson, Michigan, seeks the issuance of the writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, Petitioner challenges the legality of his conviction after a jury trial in the Macomb County Circuit Court of one count of first degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and one count of first degree felony murder, Mich. Comp. Laws § 750.316(1)(b). Petitioner was sentenced to life imprisonment without possibility of parole for these crimes. Petitioner raises claims of (1) insufficient evidence to support his murder convictions, (2) insufficient evidence to support the charges filed in the trial court and presented to the jury, (3) improper jury instructions concerning the law of aiding and abetting, (4) prosecutorial misconduct, (5) ineffective assistance of trial counsel, (6) ineffective assistance of appellate counsel, and (7) denial of his right of confrontation. The Court concludes for the following reasons that the petition must be denied.

### II. Factual Background

Petitioner was convicted of murdering a nineteen-year-old woman named Lisa Gipson shortly after he picked her up at a bar and forced her to perform fellatio upon him. Petitioner doused her body with gasoline and burned it after she was dead.

The Michigan Court of Appeals summarized the evidence of Petitioner's guilt and decided his sufficiency of the evidence claim as follows:

[D]efendant argues that there was insufficient evidence from which the jury could determine beyond a reasonable doubt that he was guilty of first-degree premeditated murder. We disagree.

When reviewing a ruling on a motion for directed verdict, we must consider the evidence presented by the prosecutor up to the time the motion was made and determine whether a rational trier of fact could find proven beyond a reasonable doubt the essential elements of the charged crime. *People v. Daniels,* 192 Mich.App. 658, 665, 482 N.W.2d 176 (1991). To establish first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Schollaert,* 194 Mich.App. 158, 170, 486 N.W.2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing and evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. Id. Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove the elements of a crime. *Id.; People v. McKenzie,* 206 Mich.App. 425, 428, 522 N.W.2d 661 (1994).

Moreover, M.C.L. § 767.39; MSA 28.979, provides:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a

crime. *People v. Turner*, 213 Mich.App. 558, 568, 540 N.W.2d 728 (1995). An aider and abettor's state of mind may be inferred from all the facts and circumstances. *Id.* Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Id.* at 569, 540 N.W.2d 728. To sustain an aiding and abetting charge, the guilt of the principal must be shown. *Id.*

The evidence indicates that the victim willingly left a bar with defendant and Christopher Tull. Once the three arrived at defendant's house, Alan Klakulak awoke and watched while laying on a couch. Klakulak testified that defendant pulled the victim into his bedroom by grabbing her arm and waist, while she said "no" approximately three times. While defendant, Tull, and the victim were in the bedroom, Klakulak heard defendant tell the victim how powerful he was and heard him order her to perform fellatio or he would "bash [her] head in." Later, Klakulak saw defendant and the victim enter the bathroom, where the victim appeared to be on her hands and knees and rocking back and forth. Defendant, the victim, and Tull returned to the bedroom. Defendant subsequently went outside and returned with a paper bag in his hand. Klakulak then saw the three leave the bedroom. A paper bag covered the victim's head. Defendant and Tull had the victim by her arms and guided her out of the house.

Klakulak heard defendant open and close the garage door before he left with Tull and the victim. Another witness saw defendant begin to get in the pickup truck, then go back, after which he heard a clinking noise that sounded like metal hitting metal. The witness then saw defendant pulling his hand out of the bed of the pickup truck as if he had just put something there. A short time later, defendant filled a container with gasoline at an Amoco station near his house. The victim was then driven to a building approximately seven miles away where her body was burned. An autopsy revealed that the victim was killed by a gag that had been forced down her throat. When defendant was apprehended, he had first- and second-degree burns on his right hand, wrist and leg. From this evidence we conclude that the jury could reasonably have found that defendant either intentionally killed the victim himself or aided and abetted Tull in killing her and that the killing was premeditated and deliberate. Although defendant claims that Tull killed the victim without defendant's knowledge while he was asleep in the truck, the jury was entitled to weigh defendant's credibility and disbelieve him. *People v. Daniels*, 172 Mich.App. 374, 378, 431 N.W.2d 846 (1988). Therefore, we find that there was sufficient evidence from which a rational jury could determine beyond a reasonable doubt that defendant committed first-degree premeditated murder.

*People v. Alder*, No. 191597, 1997 WL 33344156 at *1–2 (Mich.Ct.App. July 29, 1997) (*per curiam*).

### III. Procedural History

Petitioner was convicted of first degree murder and felony murder after a jury trial. Petitioner was sentenced to mandatory life imprisonment without possibility of parole.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising claims of insufficient evidence, improper allowance of the first degree murder charges to go to the jury, improper jury instructions regarding aiding and

abetting, prosecutorial misconduct, ineffective assistance of trial counsel, and double jeopardy.

The Michigan Court of Appeals vacated Petitioner's felony murder conviction on double jeopardy grounds and denied his other claims, affirming his first degree murder conviction and remanding his case to the trial court for re-sentencing on his first degree premeditated murder conviction only. *Id. at *3–4.* Petitioner sought leave to appeal in the Michigan Supreme Court which was denied. *People v. Alder,* 457 Mich. 881, 586 N.W.2d 923 (1998).

Petitioner next filed a petition for the writ of habeas corpus in the Eastern District of Michigan on August 3, 1998. Petitioner then moved for a stay, claiming that he had additional unexhausted claims he wished to present to the Michigan state courts. On September 9, 1998, the Court dismissed the petition without prejudice for failure to exhaust state court remedies. *Alder v. Curtis,* No. 98–73321, Docket Entry 6 (E.D.Mich. Sept. 9, 1998) (Edmunds, J.).

Petitioner next filed a motion for relief from judgment, raising claims of ineffective assistance of trial counsel, denial of the right of confrontation and cross-examination, and ineffective assistance of appellate counsel. The trial court denied the motion after considering the merits of Petitioner's claims. *People v. Alder,* No. 94–2369, (Mich. Cir. Ct. Macomb County Dec.

18, 1998). Petitioner sought leave to appeal this decision to the Michigan Court of Appeals which denied leave to appeal because Petitioner failed to establish entitlement to relief under Mich. Ct. R. 6.508(D). *People v. Alder,* No. 223486 (Mich.Ct.App. July 11, 2000). On January 30, 2001, the Michigan Supreme Court denied leave to appeal for the same reason. *People v. Alder,* 463 Mich. 963, 622 N.W.2d 791 (2001).

On or about October 17, 2001, Petitioner filed the present petition for the writ of habeas corpus, raising the following claims for relief:

I. Petitioner's first degree murder convictions are supported by insufficient evidence.

II. The trial court improperly allowed Petitioner's first degree murder charges to go to the jury for its consideration and verdict.[1]

III. Petitioner was denied due process of law when the trial judge improperly instructed the jury on the law of aiding and abetting.[2]

IV. Petitioner was denied a fair trial by prosecutorial misconduct.

V. Petitioner was denied the effective assistance of appellate counsel, showing cause for Petitioner's failure to present claims first raised in his motion for relief from judgment in his appeal of right.

---

**1.** Petitioner raises claims concerning both his premeditated murder conviction and his felony murder conviction. Because the Michigan courts vacated Petitioner's felony murder conviction as violating the Double Jeopardy Clause, it is unnecessary for this Court to consider Petitioner's claims concerning this now non-existent conviction for felony murder.

Further, there is no reason to discuss claims I and II separately. First, a successful sufficiency of the evidence claim would entitle Petitioner to relief from his conviction and a

separate discussion of Petitioner's claim II would be redundant. Second, if a conviction is supported by constitutionally sufficient evidence, allowing the jury to consider the evidence and render a verdict would clearly be correct. Therefore, this Court shall discuss Petitioner's claims I and II together.

**2.** Petitioner divided his jury instruction claims into two claims which he numbered claims III and V. To avoid redundancy, this Court shall discuss Petitioner's jury instruction claims together.

## IV. Standard of Review

The standard for reviewing applications for the writ of habeas corpus is provided for in 28 U.S.C. § 2254(d). This section states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

■ Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1);[3] *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

**3.** Section 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e)(1).

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis original).

With this standard in mind, the Court proceeds to address the petition for the writ of habeas corpus.

## V. Discussion

### A. Sufficiency of the Evidence Claim

Petitioner claims that his first degree premeditated murder conviction is supported by insufficient evidence.

■ The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether sufficient evidence was presented to the jury from which a reasonable factfinder could find that the essential elements of the crime were proven beyond a reasonable doubt.[4] The appropriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review recognizes the trier of fact's responsibility to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781.

■ The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Kines v. Godinez,* 7 F.3d 674, 678 (7th Cir.1993). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders,* 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).

■ The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz,* 615 F.Supp. 224, 227 (E.D.Mich.1985). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; see also Evans–Smith v. Taylor,* 19 F.3d 899, 909 (4th Cir.1994) ("circumstantial evidence need not exclude every reasonable hypothesis of innocence. Rather 'circumstances altogether inconclusive, if separately considered, may, by their number and joint operation ... be sufficient to constitute conclusive proof.'" (quoting *Stamper v. Muncie,* 944 F.2d 170, 174 (4th Cir.1991))).

**4.** In general, the prosecution presents evidence of the defendant's guilt, and of course, the defense has no duty to present any evidence at all. However, where the defense does present evidence, this evidence also may directly or inferentially support a reasonable finding of guilt. For instance, if a defense witness called to provide alibi evidence actu-ally testified she never saw the defendant the day of the crime, or worse (for the defendant) testified she saw the defendant and victim together shortly before the crime. In the present case, Petitioner testified on his own behalf. The jury was not required to interpret this evidence favorably to the defendant.

Petitioner challenges the sufficiency of the evidence to support his first degree premeditated murder conviction. This Court must reject his challenge if, considering the evidence in the light most favorable to the prosecution, it concludes that a rational fact finder could have found that the elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. In making this judgment, this Court must bear in mind that the beyond a reasonable doubt standard, itself mandated by the Due Process Clause, requires the factfinder "to reach a subjective state of near certitude of the guilt of the accused [and] symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." *Id.* at 315, 99 S.Ct. 2781.[5] *See also, Victor v. Nebraska*, 511 U.S. 1, 14, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (rejecting a due process challenge to a jury instruction in a criminal case, concluding that, "the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused"); *United States v. Fountain*, 993 F.2d 1136, 1139 (4th Cir.1993); Jon O. Newman, *Beyond "Reasonable Doubt,"* 68 N.Y.U. L.Rev. 979 (1993).

This Court recognizes that the very existence of the *Jackson* test presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. This Court shall assume that judges may do so as well. The test was adopted to provide an additional safeguard against that possibility, and gives added assurance that guilt should never be found except on a rationally supportable state of near certitude, that is, proof upon which a rational factfinder could find proof of the crime beyond a reasonable doubt. *Evans–Smith*, 19 F.3d at 905. Therefore, the question before this Court in the instant case is whether the evidence, taken together and viewed in the light most favorable to the prosecution, could allow any rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the elements of first degree murder. *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir.1998). In conducting such an inquiry this Court considers all the evidence presented in the record.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781. Hence, it is necessary to summarize the elements of first degree murder under Michigan law.

 Petitioner was convicted of first degree premeditated murder. To convict a defendant of this crime in Michigan, it must be shown that the defendant caused the death of the victim while having an actual intent to kill which was premeditated and deliberate and that the killing was

**5.** "In a criminal case [ ] we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.... In this context, I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free. It is only because of the nearly complete and long-standing acceptance of the reasonable-doubt standard by the States in criminal trials that the Court has not before today had to hold explicitly that due process, as an expression of fundamental procedural fairness, requires a more stringent standard for criminal trials than for ordinary civil litigation." *Winship*, 397 U.S. at 371, 90 S.Ct. 1068 (Harlan, J., concurring).

not excused or justified. *People v. Garcia,* 398 Mich. 250, 247 N.W.2d 547 (1976); Mich. Comp. Laws § 750.316. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. Both describe thought processes which are undisturbed by hot blood. The prosecution must prove that there was such a lapse of time as would give the mind time to calculate the purpose and intent of the killing. *People v. Gill,* 43 Mich.App. 598, 204 N.W.2d 699 (1972). The minimum time necessary to develop these thought processes is uncertain, but the interval between thought and action should be long enough to give a reasonable person time to subject his or her actions to a "second look." *People v. Morrin,* 31 Mich.App. 301, 187 N.W.2d 434 (1971). A few seconds between the antagonistic action between the defendant and the victim and defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation. *People v. Glover,* 154 Mich.App. 22, 397 N.W.2d 199 (1986) (holding that, where the defendant and victim argued antagonistically and defendant turned away from the victim as if to walk away, then pulled a gun out and shot the victim to death, a jury question was raised on the issue of premeditation).

Factors which may be considered in determining whether a defendant had the opportunity to subject his or her thoughts and actions to a second look include: (1) the previous relationship of the parties; (2) the defendant's actions prior to the killing; (3) the circumstances of the killing; and (4) the defendant's conduct after the killing. *People v. Johnson,* 99 Mich.App. 547, 297 N.W.2d 713 (1980).

In the present case, the opinion of the Michigan Court of Appeals shows that the appellate court correctly stated the law of first degree premeditated murder and the *Jackson* standard for reviewing a challenge to the sufficiency of the evidence. The Michigan Court of Appeals noted that there was evidence that Petitioner picked the victim up at a bar and took her to a private place, his residence; threatened the victim with great bodily harm or death to force her to perform sexual acts; later covered the victim's head with a bag to obscure her vision; led the victim out of his house and carried her away in a pickup truck while accompanied by Christopher Tull; was present when the victim was killed by forcing a gag down her throat; obtained gasoline at a service station; and drove the victim seven miles away to a building where Petitioner burned her body. This was more than sufficient evidence from which a rational jury could conclude that Petitioner killed the victim with a premeditated and deliberate actual intent to kill and/or aided and abetted Mr. Tull in doing so. Obviously, nothing about the circumstances of the crime remotely suggests that the killing was excusable or justified. On the contrary, it was outrageous, loathsome, and completely inexcusable and unjustified.

Petitioner testified, denying guilt of murder, and asserting that Mr. Tull killed the victim while Petitioner was asleep and that Mr. Tull went beyond the limits of Petitioner's intent to harm the victim. However, the jury was not required to believe any of Petitioner's testimony. The Michigan Court of Appeals decision denying Petitioner's sufficiency of the evidence claim is a reasonable application of controlling federal constitutional law as determined by the United States Supreme Court. Therefore, this claim is denied.[6]

6. Petitioner's conviction of first degree premeditated murder is supported by constitutionally sufficient evidence. Therefore, Petitioner's claim that it was error to subject him to trial on this charge and submit this charge to the jury lacks merit.

## B. Jury Instruction Claims

Petitioner claims that the trial judge improperly and incompletely instructed the jury on the law of aiding and abetting, thereby depriving him of a fair trial.

The Michigan Court of Appeals decided this issue as follows:

> Defendant next argues that the trial court's instruction to the jury on aiding and abetting was erroneous and that the trial court erred by not *sua sponte* instructing the jury that they could convict him [7] if the actions of Christopher Tull exceeded the common criminal enterprise. Because defendant neither objected to the trial court's aiding and abetting instruction, nor requested the common enterprise instruction, appellate review is foreclosed unless necessary to prevent a miscarriage of justice. *People v. Messenger*, 221 Mich.App. 171, 177, [561 N.W.2d 463, 465–66] (1997). Upon reviewing the trial court's jury instructions, we find that they were proper. Therefore, no miscarriage of justice will result by our refusal to fully review this issue.
>
> Defendant also claims that he was denied the effective assistance of counsel by his attorney's failure to object to the court's jury instruction on aiding and abetting and request a common criminal enterprise instruction. Because the court's jury instructions were proper, defense counsel's objection or request would not have affected the outcome of trial, and therefore defendant was not denied his right to the effective assistance of counsel. *People v. Stewart (On Remand)*, 219 Mich.App. 38, 41, 555 N.W.2d 715 (1996).

*Alder*, 1997 WL 33344156 at *3.

Petitioner contends that the trial judge deprived him of a fair trial by failing to instruct the jury that "if the petitioner had joined a criminal enterprise and his associates then engaged in actions beyond the understood enterprise the petitioner could not be held responsible for the actions which exceeded the terms of the initial enterprise." Pet'r Br. at 25.

Petitioner does not allege that the trial court failed to instruct the jury that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Mich. Comp. Laws § 767.39. Nor does Petitioner allege that the trial judge failed to instruct the jury that aiding and abetting includes all forms of assistance rendered to the perpetrator of a crime and includes all words or deeds that might support, encourage, or incite the commission of a crime. *Turner*, 213 Mich.App. at 568, 540 N.W.2d at 733–34. Furthermore, Petitioner does not allege that the trial judge failed to instruct the jury that, to find Petitioner guilty of first degree premeditated murder, the jury must find that Petitioner's killing of the victim was premeditated and deliberate and/or that he aided and abetted Mr. Tull in the killing while having this premeditated and deliberate intent, or knowing that Mr. Tull did.

The burden of demonstrating that an erroneous instruction was so prejudicial

---

**7.** The Michigan Court of Appeals opinion should read "could not convict him if the actions of Christopher Tull exceeded the common criminal enterprise." *See People v.*

*Knapp*, 26 Mich. 112, 115 (1872) ("There can be no criminal responsibility for anything not fairly within the common enterprise....").

that it will support a collateral attack upon the constitutional validity of a state court conviction is greater than the showing required in a direct appeal. To warrant habeas relief because of incorrect jury instructions, a petitioner must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Wood v. Marshall,* 790 F.2d 548, 551–52 (6th Cir.1986); *Thomas v. Arn,* 704 F.2d 865, 868–69 (6th Cir.1983). The question in a habeas case is whether the allegedly improper instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned;" furthermore, an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe,* 431 U.S. 145, 154–55, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Scott v. Mitchell,* 209 F.3d 854, 882 (6th Cir. 2000).

■ In the present case, the state court did not articulate in detail its reasoning concerning Petitioner's jury instruction claim. Rather, the state court found that Petitioner failed to object to the jury instructions as given, that the jury instructions were proper under state law, and that no miscarriage of justice would result from its refusal to fully review this issue. When a state court fails to articulate its reasoning, the federal court must "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris,* 212 F.3d at 943. This independent review "remains deferential" to the state court's decision that the petitioner was not entitled to relief. *Id.* "[T]he result of a state court's

decision controls when the state court fails to explain its reasoning; [the reviewing court may] not 'grant relief unless the state court's result is not in keeping with the strictures of the [§ 2254].' " *Schoenberger v. Russell,* 290 F.3d 831, 841 (6th Cir.2002) (quoting *Harris,* 212 F.3d at 943).

■ The jury instructions as given properly instructed the jury of the elements of first degree premeditated murder, the law of aiding and abetting, and the prosecution's burden to prove every element of the crime charged beyond a reasonable doubt. The jury instructions did not violate due process, or render Petitioner's trial unfair. On the contrary, the jury instructions adequately protected Petitioner's right to a fair trial. The state court's decision denying this claim is a reasonable result under federal constitutional law and § 2254. Therefore, Petitioner's jury instruction claim is denied.

## C. Prosecutorial Misconduct Claim

Petitioner contends that prosecutorial misconduct denied him a fair trial and that ineffective assistance of trial and appellate counsel excuses his procedural default of this claim.

The Michigan Court of Appeals resolved this claim as follows:

Defendant next argues that he was denied a fair trial by virtue of prosecutorial misconduct. Defendant objected to only one of the instances of alleged misconduct he raises on appeal. Appellate review of these unchallenged comments is precluded unless our refusal to review the issue would result in a miscarriage of justice or if a cautionary instruction could not have cured the prejudicial effect. *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557 (1994). Where defendant objected to the prosecutor's comment, the test of misconduct by the

prosecutor is whether defendant was denied a fair and impartial trial. *People v. Legrone,* 205 Mich.App. 77, 82–83, 517 N.W.2d 270 (1994). Issues of misconduct by a prosecutor are decided case by case. The reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *Id.* A prosecutor may not argue facts not entered into evidence. However, the prosecutor is free to argue the evidence and all reasonable inferences from the evidence as it relates to the prosecutor's theory of the case. *People v. Bahoda,* 448 Mich. 261, 282, 531 N.W.2d 659 [ (1995) ]. Nevertheless, prosecutors should not express their personal opinions of a defendant's guilt. *Id.* at 282–283, 531 N.W.2d 659. Defendant claims that the prosecutor improperly attacked his credibility during rebuttal closing argument when he stated the following:

> And ask yourself if anyone who could burn a 19–year–old girl's body, without any problems burn that body, would they hesitate one second to get in here and lie about their activity?

We assume that by stating that the prosecutor "improperly attacked defendant's credibility," defendant is arguing that the prosecutor expressed his personal belief in defendant's guilt. Taken in context, the prosecutor posed a legitimate question to the jury regarding whether defendant could be considered credible in light of the fact that he admitted to burning the victim's body but claimed to be asleep in the truck while Christopher Tull killed her. Therefore, defendant was not denied a fair and impartial trial by the prosecutor's comment.

Defendant did not object to the remainder of the prosecutor's comments that he argues were improper. After a thorough review of the record, we find that a majority of the prosecutor's comments were not improper, or, if marginally improper, could have been adequately addressed by timely requested curative instructions. Accordingly, a miscarriage of justice will not occur if we decline to fully review this issue.

Defendant also argues that he was denied effective assistance of counsel by his attorney's failure to object to the prosecutor's improper comments. However, because none of the prosecutor's comments would have affected the outcome of trial, defendant was not denied his right to the effective assistance of counsel.

*Alder,* 1997 WL 33344156 at *3–4.

In Petitioner's direct appeal, the Michigan Court of Appeals found that all but one of Petitioner's prosecutorial misconduct claims were procedurally defaulted because of his failure to object to the complained-of remarks at trial. *Id.*

Further, in denying Petitioner leave to appeal from his motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave stating that he had failed to meet the burden of showing entitlement to relief under Mich. Ct. R. 6.508(D). In *Simpson v. Jones,* 238 F.3d 399, 407–08 (6th Cir.2000), the Sixth Circuit Court of Appeals held that an order of the Michigan Supreme Court denying leave to appeal and stating simply that the petitioner "failed to meet the burden of establishing entitlement to relief under [Mich. Ct. R.] 6.508(D)" was sufficient to constitute a procedural bar, despite its brevity and its failure to cite the specific procedural default provisions of Mich. Ct. R. 6.508(D)(3). Additionally, this Court notes that in *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the United States Supreme Court noted that a state court may address the merits of a federal claim in an alternative holding

without waiving its procedural bar and permitting federal review.

Petitioner maintains that ineffective assistance of trial and appellate counsel excuses his procedural default of most of his prosecutorial misconduct claims. Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Mapes v. Coyle,* 171 F.3d 408 (6th Cir.1999); *Richardson v. Elo,* 974 F.Supp. 1100, 1104 (E.D.Mich.1997) (Gadola, J.). Not just any deficiency in counsel's performance will excuse a procedural default; however, the assistance must have been so ineffective as to violate the United States Constitution. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Attorney error that falls short of constitutional ineffective assistance of counsel does not constitute cause to excuse a procedural default. *Bruton v. Phillips,* 64 F.Supp.2d 669, 682–683 (E.D.Mich.1999) (Gadola, J.). If petitioner's ineffective assistance of appellate counsel claim lacks merit, it cannot constitute cause to excuse his default. *Sherrill v. Hargett,* 184 F.3d 1172, 1176 (10th Cir.1999).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant or suggested by the record. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

An attorney's failure to present a meritless issue on appeal does not constitute ineffective assistance of counsel. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes,* 171 F.3d at 413. Thus, to determine whether petitioner re-

ceived ineffective assistance of appellate counsel, this Court must first examine the merits of the claims which appellate counsel might have presented in petitioner's direct appeal, but failed to do so. "[T]he questions then become whether appellate counsel was constitutionally ineffective for failing to raise those errors on appeal and, if so, whether the petitioner was prejudiced by counsel's unsatisfactory representation." *Id.* at 413–14.

Petitioner claims that he received ineffective assistance of trial counsel, because his trial counsel failed to object to most of the alleged prosecutorial misconduct, and ineffective assistance of appellate counsel because appellate counsel did not raise these claims in his appeal of right.

Petitioner contends that the prosecutor improperly testified regarding matters of his own personal knowledge when he commented that (1) Alan Klakulak's testimony showed that Petitioner forced the victim into the bedroom and forced her to perform a sexual act; (2) that a knife found in Mr. Tull's pick-up truck was evidence that the victim was forced to get into Mr. Tull's truck; (3) that Mr. Klakulak's testimony that he saw the victim on her hands and knees in the bathroom rocking back and forth and heard only another person's voice indicated that she was forced to perform a sexual act on that person; and (4) that Petitioner burned the victim's body to destroy evidence. Pet'r Br. at 31–32.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Don-*

nelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Factors to be considered in weighing the extent of a prosecutor's misconduct are: the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997).

■■■■■ A prosecutor may not argue or refer to facts not on the record. The prosecutor is, however, entitled to comment on the evidence and to draw reasonable inferences from it. "[T]he prosecutor may not ask the jury to convict the defendant on the basis of the prosecutor's personal knowledge and the prestige of his office rather than on the evidence." *People v. Fuqua*, 146 Mich.App. 250, 254, 379 N.W.2d 442, 444–45 (1985). It is not misconduct warranting reversal for a prosecuting attorney to express his individual belief in the guilt of an accused if such belief is based solely on evidence introduced and if jury is not led to believe there is other evidence which is known to prosecutor but which has not been introduced, justifying that belief. *Henderson v. United States*, 218 F.2d 14 (6th Cir.1955). However, it is well established that the personal opinion of counsel has no place at trial. *United States v. Carroll*, 26 F.3d 1380, 1384–85 (6th Cir.1994). It is unprofessional for counsel to express a personal belief or opinion in the truth or falsity of any testimony. *United States v. Young*, 470 U.S. 1, 9, n. 7, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). It is also unprofessional for counsel to make personal attacks on opposing counsel. On the other hand, counsel must be given leeway to argue reasonable inferences from the evidence. Where there is conflicting testimony, it may be reasonable to infer, and according-

ly to argue, that one of the two sides is lying. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991). Even if the prosecutor's comments were improper, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Young*, 470 U.S. at 11, 105 S.Ct. 1038.

■■■■■ Petitioner's claim that the prosecutor improperly testified as to matters of his own personal knowledge lacks merit. Review of the record and Petitioner's claims shows that the prosecutor merely raised reasonable inferences based on the evidence submitted in open court. This was not misconduct. Rather, it was permissible and fair argument.

Petitioner also claims that the prosecutor improperly vouched for the credibility of various witnesses when he (1) commented that there was no evidence that Mr. Klakulak had an "axe to grind" against Petitioner, or any other improper motive to testify as he did; (2) asked if a person who could burn a nineteen-year-old girl's body to destroy evidence would necessarily give truthful testimony; and (3) asked if Mr. Klakulak and other witnesses had any reason to lie.

■■■■■ When reviewing claims of prosecutorial misconduct, the court must determine first whether the statements were improper. *See United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir.1986). If they appear improper, then the court must look to see if they were flagrant and warrant reversal. *See Carroll*, 26 F.3d at 1388. To determine flagrancy, the standard set by the Sixth Circuit is: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or

among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *United States v. Monus*, 128 F.3d 376, 394 (6th Cir.1997) (citing *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir.1996)). A petitioner is not entitled to habeas relief unless the prosecutorial misconduct is "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, ... or so gross as probably to prejudice the defendant." *Pritchett*, 117 F.3d at 964 (citations omitted); *United States v. Tocco*, 200 F.3d 401, 420–21 (6th Cir.2000).

■■■■ Petitioner complains of alleged improper vouching. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir.1993) (*per curiam* ) (citing *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir.1987)). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir.1992) (citation omitted), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness' testimony, thereby placing the prestige of the office of the prosecuting attorney behind that witness.

■■■■ In the present case, the prosecutor did not express a personal belief in the credibility of Mr. Klakulak, Dean Fradle, or other witnesses. Nor did the prosecutor argue evidence not in the record. Rather, the prosecutor made comments which were reasonable inferences from the record evidence and asked rhetorical questions to suggest inferences which were also reasonable commentary or suggested inferences based on the evidence admitted at trial. The prosecutor did not assert or imply that he had any special reason apart from the record evidence to believe that these witnesses were testifying truthfully.

The Sixth Circuit, in *United States v. Francis*, stated that "[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." 170 F.3d 546, 550 (6th Cir.1999). "[I]mproper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury ...." *Id.* (citations omitted). Here, it is clear that the prosecutor did not engage in improper vouching because the prosecutor did not make any explicit comments indicating that he had a personal belief in the credibility of any prosecution witness, or suggest that he had knowledge of evidence not before the jury which validated a witness' testimony.

This Court concludes that Petitioner has failed to show that the prosecutor engaged in misconduct at all, much less that prosecutorial misconduct so permeated his trial as to deprive him of due process. Therefore, this claim does not warrant habeas relief.

■■■■ Further, Petitioner has not shown that there is a reasonable probability that the alleged misconduct adversely affected the outcome of his trial. In *Brecht v. Abrahamson*, the United States Supreme Court held that federal courts on habeas review of constitutional trial errors must determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted). Consequently, federal courts are to use and follow *Brecht* when reviewing habeas petitions of constitutional trial errors based on state court determinations of harmless error. Furthermore, the harm-

less error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999); *see also O'Neal v. McAninch,* 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).

In this case, the evidence of Petitioner's guilt was extremely compelling, if not overwhelming. The complained of prosecutorial misconduct was minor, if it was error at all. Thus, this Court concludes that Petitioner has failed to show that the alleged prosecutorial misconduct had an injurious effect or influence on the jury's verdict.

 Additionally, when the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750–751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If a petitioner does not show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Bell v. Smith,* 114 F.Supp.2d 633, 638 (E.D.Mich.2000) (Gadola, J.). However, in an extraordinary case, where a constitu-

tional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Carrier,* 477 U.S. at 479–80, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *see also Hilliard v. United States,* 157 F.3d 444, 450 (6th Cir. 1998).

 Failing to present meritless objections at trial or meritless claims on appeal is not ineffective assistance of counsel. *Mapes,* 171 F.3d at 413. Review of all of Petitioner's defaulted prosecutorial misconduct claims shows that these claims lack merit. Consequently, failure to present these claims to the trial court or in Petitioner's appeal of right was not ineffective assistance of counsel. Hence, Petitioner has failed to show good cause for his state procedural defaults and is not entitled to habeas review unless he can show that failure to review his claims would work a manifest injustice.[8]

---

8. Because Petitioner has not shown cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. at 533, 106 S.Ct. 2661. In any event, because Petitioner's conviction is supported by compelling or overwhelming evidence, and the errors alleged are minor, if errors at all, Petitioner would be unable to show prejudice from the errors alleged in his

petition. *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Because there is very strong evidence of Petitioner's guilt and a lack of evidence to support his claim, the prejudice component of the cause and prejudice test will not be satisfied. *Rust,* 17 F.3d at 161.

■ Petitioner has not shown that failure to consider his claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750–51, 111 S.Ct. 2546. There is nothing in the record to indicate that constitutional error has probably resulted in the conviction of one who is actually innocent. On the contrary, the record shows that petitioner was guilty of first degree premeditated murder. Petitioner has not supported his allegations of constitutional error with any new reliable evidence of actual innocence that was not presented at trial. Hence, Petitioner has not shown that he is entitled to review of his prosecutorial misconduct claims despite his procedural defaults. *Schlup,* 513 U.S. at 324, 115 S.Ct. 851.

For all of the above-stated reasons, this Court concludes that Petitioner's prosecutorial misconduct claims lack merit and/or are barred by his state procedural defaults. Consequently, these claims are denied.

### D. Ineffective Assistance of Trial Counsel Claim

Petitioner contends that trial counsel was ineffective for failing to do adequate pre-trial investigation and preparation. Petitioner contends that trial counsel was ineffective for (1) failing to obtain a police report of a statement made by witness Viola Turner, a gas station attendant who testified that she saw Petitioner buy gasoline in gas cans, after the killing, in which Ms. Turner allegedly stated that she could not identify the man who bought the gasoline, and failure to adequately impeach Ms. Turner; (2) failure to contact and interview potential defense witness Leighanna Whitaker, whom Petitioner alleges would have testified that she once was "naked in a Jacuzzi and slept together [with Petitioner] in the same bed after Petitioner's sexual advances were rebuffed," Pet'r Br. at 73, and that witness Mr. Fradle did not remove all his guns from the house as he

claimed at a pretrial hearing because he was afraid of Petitioner; (3) failing to achieve suppression of a knife and seek suppression of a roll of tape admitted into evidence; (4) failure to object to admission of a second gas can; (5) failure to object to an unreliable identification by Ms. Turner and unreliable testimony regarding Petitioner's sexual assault of the victim; (6) failure to obtain an expert to testify regarding intoxication "to demonstrate the viability of his defense that he was asleep from drinking too much when the victim was murdered by his co-defendant, or in the alternative, he lacked the necessary specific intent to kill" to be convicted of first degree premeditated murder, Pet'r Br. at 90; (7) failing to seek a mistrial or limiting instruction regarding the admission of evidence that Petitioner was "penalized by the military for violating a (civil) restraining order and for the underlying of [sic] Petitioner's discharge from the United States Marine Corps," Pet'r Br. at 99; and (8) cumulative trial error and omissions by defense counsel. For purposes of this opinion, this Court shall assume without deciding that Petitioner's factual allegations concerning defense counsel's alleged errors and omissions are true. Nevertheless, these claims do not entitle Petitioner to habeas relief.

There exists clearly established Supreme Court precedent governing ineffective assistance of counsel claims. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-pronged test for determining whether a habeas corpus petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Sec-

ond, a petitioner must show that counsel's deficient performance prejudiced the petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (citations omitted).

The Supreme Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996).

 Petitioner argues that counsel was ineffective for failing to obtain a police report in which Ms. Turner allegedly stated that she could not identify the man who arrived in a white pickup truck and bought gas in a can at the service station where she worked. At trial, Ms. Turner testified that a balding white man who appeared jovial bought the gas. Petitioner is bald and white. Petitioner maintains that, had he obtained this report, defense counsel could have impeached Ms. Turner's testimony more effectively. The fact is that it is not contradictory to state that one is unable to identify a person, yet is able to describe the person. Further, Petitioner did not deny being with the victim and his co-defendant the night of the killing. Nor did he deny burning the victim's body. For all of these reasons, Petitioner fails to show that he was prejudiced by counsel's failure to obtain the police report and use it during cross-examination of Ms. Turner.

 Petitioner also fails to show prejudice from the alleged failure to interview and call Ms. Whitaker as a witness. There is no reasonable probability that testimony by Ms. Whitaker that she was naked in a Jacuzzi with Petitioner and slept with him unmolested after rebuffing his sexual advances and/or that Mr. Fradle did not remove all his guns from the house out of fear of Petitioner would have changed the outcome of Petitioner's trial. Whether Petitioner may have left Ms. Whitaker alone after having his sexual ad-

vances rejected, the victim in this case was not left alone. No guns were involved in the victim's killing. She was murdered by a gag and her body was burned with gasoline. Mr. Klakulak's testimony provided strong direct evidence that the victim had been forced to perform a sexual act on Petitioner. In any event, Petitioner admitted being with the victim and his codefendant throughout the incident, contending that Mr. Tull killed the victim while Petitioner slept. The purported testimony Ms. Whitaker might have offered concerning Petitioner's prior behavior with her and whether Mr. Fradle was frightened enough of Petitioner to remove all his guns from the house would have had no effect on the outcome of Petitioner's trial.

■ A knife and a roll of duct tape and a second gas can were admitted into evidence. These items were found in proximity to the crime scene, Mr. Tull's truck, and the victim's purse. There was no basis to have them excluded from evidence. Hence, Petitioner fails to show that declining to object to their admission was unprofessional error.

Petitioner contends that it was unprofessional error to fail to object to the allegedly unreliable identification offered by Ms. Turner and allegedly unreliable testimony by Mr. Klakulak about the sexual assault against the victim. There was no basis to object to admission of this testimony.

■ A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). It is the likelihood of misidentification that violates the defendant's due process right.

*Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The due process concern is heightened when that misidentification is possible because the witness is called upon to identify a stranger whom she has observed only briefly, under poor conditions, and at a time of extreme emotional stress and excitement. *See Manson v. Brathwaite*, 432 U.S. 98, 112, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Simmons*, 390 U.S. at 383–84, 88 S.Ct. 967.

■ Ms. Turner testified as to seeing a balding white man purchase gasoline in a can at a service station. While the certainty of her ability to so describe the man could be challenged on cross-examination, nothing in the record indicates that her opportunity to observe the man was inadequate to allow her to testify as to what she said she saw. Furthermore, Petitioner does not allege that Ms. Turner identified him as the man who purchased the gas. Rather, Ms. Turner described the man who bought the gas in a manner consistent with Petitioner's general appearance. The fact that Ms. Turner stated she was unable to *identify* the occupants of the white pickup truck did not nullify her ability to *describe* them. Additionally, the due process concerns of *Simmons* and its progeny are triggered when an in-court identification follows an impermissibly suggestive pretrial identification procedure. Petitioner has not alleged that Ms. Turner was involved in any such pre-trial procedure. Therefore, there was no basis upon which to seek exclusion of her testimony and it was not attorney error not to do so.

■ As for Mr. Klakulak's testimony, he was a direct witness to part of the offense. The fact that Mr. Klakulak testified in part as to what he heard does not render his testimony inadmissible or inherently unreliable. (Mr. Klakulak also testified in part as to what he saw). It was for the jury to determine the weight of Mr.

Klakulak's testimony. "Earwitness-testimony" may provide substantial evidence of a defendant's presence at a crime scene and his participation in the crime. *Long v. Dutton*, 621 F.Supp. 1209, 1212 (M.D.Tenn.1985); *United States v. Burton*, 288 F.3d 91, 98 (3d Cir.2002). The identification of the voice of a person suspected of a crime as the voice of a suspected criminal is admissible evidence. *Stovall v. Denno*, 388 U.S. 293, 295, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Hence, there was no basis to object to the admission of Mr. Klakulak's testimony and declining to do so was not attorney error.

■ Petitioner next contends that it was prejudicial attorney error to fail to obtain an expert witness to testify that Petitioner's intoxication may have rendered him asleep or unconscious when, Petitioner alleges, Mr. Tull murdered the victim without his knowledge or participation, and/or rendered Petitioner unable to form the necessary intent to kill to support a first degree premeditated murder conviction.

This claim fails for two reasons. First, even if Petitioner was so intoxicated that he was asleep or unconscious when the victim was gagged to death, ample evidence was presented that he had already aided and abetted the first degree premeditated murder of the victim before the gag was inserted into her mouth and throat. Hence, there is no reasonable probability that expert testimony regarding intoxication would have affected the outcome of his trial concerning his guilt as an aider and abettor. Second, testimony that Petitioner participated in sexually assaulting the victim, participated in leading her out of the house and into the pickup truck with her head covered with a bag, and that he participated in burning her body shortly after she was killed renders so unbelievable his claim that he was so intoxicated at the time of her death that he could not

have participated in the killing and/or formed the necessary intent to support a premeditated murder conviction, that there is no reasonable probability that having an expert testify regarding intoxication would have changed the jury's view of his participation in the killing and/or the outcome of his trial. Consequently, Petitioner fails to show *Strickland* prejudice regarding this claim.

■ Petitioner contends that he was prejudiced by defense counsel's failure to exclude evidence that Petitioner was discharged from the Marines for violating a civil restraining order regarding having contact with his ex-wife. This evidence was of such minimal impact that there is no reasonable probability that, but for counsel's failure to attempt to have it excluded, the outcome of Petitioner's trial would have been different. Thus, even if it was, *arguendo*, unprofessional error to fail to exclude this evidence, Petitioner has not shown prejudice from this error.

· Petitioner finally contends that cumulative attorney error prejudiced his defense. The Sixth Circuit has held that regardless of whether each of a petitioner's alleged errors, standing alone, would require finding a deprivation of due process, the reviewing court may look to whether the cumulative effect of the errors was such that the petitioner was denied fundamental fairness. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir.1983). The Tenth Circuit Court of Appeals has held that "cumulative-error analysis should evaluate only the effect of matter determined to be in error, not the cumulative effect of non-errors." *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir.1990); *see also Lundy v. Campbell*, 888 F.2d 467, 481 (6th Cir. 1989) (refusing to include in the court's cumulative error analysis petitioner's assertions of error which the court held were

not arguably prejudicial to petitioner's right to a fundamentally fair trial). Likewise, the Fifth Circuit Court of Appeals has held that "any cumulative error theory must refer only to errors committed in the state trial court. A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors." *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir.1992) (*en banc*). Moreover, in *Derden,* the Fifth Circuit also held that "the error complained of must not have been procedurally barred from habeas corpus review." *Id.*

■ Petitioner has set forth seven alleged errors of trial counsel. However, this Court has found that these were not errors at all and/or if they were, they were of slight importance. In short, Petitioner's allegations of error in the trial court, when considered individually or together, "pale into relative insignificance" given the weight of the evidence against him. *Lundy,* 888 F.2d at 481. Accordingly, this Court concludes that the cumulative effect of any errors in the trial court did not deny Petitioner a fair trial.

The Michigan courts' denials of Petitioner's ineffective assistance of trial counsel claims were reasonable applications of controlling federal constitutional law. Therefore, for the above stated reasons, Petitioner's ineffective assistance of counsel claims and cumulative error claim are denied.

### E. Confrontation Clause Claim

Petitioner contends that his rights under the Confrontation Clause were violated when trial counsel failed to obtain the statement made by Ms. Turner to police shortly after the killing, thereby weakening counsel's ability to cross-examine and impeach the strength of Ms. Turner's description of the man who bought gasoline for a can as white, bald, and jovial. This claim does not entitle Petitioner to habeas relief.

■ The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. This fundamental right of confrontation is secured for those defendants tried in state as well as federal criminal proceedings. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The United States Supreme Court has held that "a primary interest secured by (the confrontation clause) is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Indeed, the right of cross-examination is part and parcel of confrontation, and the latter is meaningless without the former. In *Davis v. Alaska,* the Supreme Court reiterated much of the above and stated:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The courts have distinguished between general and particular attacks on a witness' credibility. One way to attack a witness' credibility is to introduce evidence of prior convictions. The proponent of such evidence seeks to provide the jury a basis for inferring that the witness is less credible than the average citizen, or a witness who has no prior criminal record. "The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effect-

ed by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. 1105.

The Supreme Court has emphasized that " 'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination.' " *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (quoting *Davis,* 415 U.S. at 316–17, 94 S.Ct. 1105). The Supreme Court then elaborated that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware,* 475 U.S. at 680, 106 S.Ct. 1431.

Following *Davis,* the Sixth Circuit has held that "a limitation on cross-examination which prevents a person charged with a crime from placing before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred constitutes denial of the right of confrontation guaranteed by the Sixth Amendment." *United States v. Garrett,* 542 F.2d 23, 25 (6th Cir.1976). As the Sixth Circuit has recently stated, the Sixth Amendment "compels cross-examination if that examination aims to reveal the motive, bias, or prejudice of a witness/accuser." *Boggs v. Collins,* 226 F.3d 728, 740 (6th Cir.2000).

 The violation of a defendant's right of confrontation is subject to harmless error analysis. *Delaware,* 475 U.S. at

684, 106 S.Ct. 1431. In a habeas corpus case, where a petitioner challenges his conviction collaterally, an error is harmless unless it "had a substantial and injurious effect on the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Thus, when a court considers a Confrontation Clause violation in a habeas corpus proceeding, the relevant harmless-error inquiry is whether the alleged error "had a substantial and injurious effect on the jury's verdict," *Id.* at 638, 113 S.Ct. 1710.[9] *See also O'Neal,* 513 U.S. at 445, 115 S.Ct. 992 (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).

 Under the *Brecht* standard, even if this Court assumes for the sake of argument that the Confrontation Clause error alleged by petitioner occurred, this Court holds that such error did not have a "harmful or injurious effect" on the fundamental fairness of the trial.

In the present case, Petitioner's right to cross-examine Ms. Turner was not improperly impaired or restricted by the trial court. The trial court did not prevent Petitioner from exposing any potential bias on the part of Ms. Turner, or possible difficulties she may have had observing Petitioner. For this fundamental reason, his Confrontation Clause claim fails.

Furthermore, as previously discussed, any impairment of cross-examination of Ms. Turner caused by trial counsel's failure to obtain a statement she made to police did not prejudice Petitioner, because Ms. Turner's testimony was not critical

**9.** The Sixth Circuit has recently applied *Brecht* harmless error analysis to a Confrontation Clause challenge despite the fact that it does not appear that the state court engaged in harmless error analysis. *See Norris v. Schotten,* 146 F.3d 314, 330 (6th Cir.1998).

The Sixth Circuit has more recently held that the harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir. 1999).

evidence. Ms. Turner described the man who bought gasoline as bald, white, and jovial, a very general description which fit Petitioner's appearance. But Petitioner admitted being with Mr. Tull when the victim's body was being transported and did not deny participating in burning her body. Therefore, Petitioner fails to show that any impairment of his ability to cross-examine Ms. Turner had a substantial and injurious effect on the outcome of this trial. This is an additional, alternative reason which his Confrontation Clause claim fails. Thus, the Court will deny the petition for the writ of habeas corpus.

## VI. Pending Motions

Beyond the petition, Petitioner has three motions pending before the Court. First, Petitioner moved for leave to file an amended petition so that he could add a brief in support of the petition. Such a brief in support of the petition has been already filed, docketed, and used by the Court in this Order. As a practical consequence, the Court will grant this motion insofar as the requested relief has already issued (i.e., no further amendments to the petition will be permitted).

█ Second, Petitioner moved for an evidentiary hearing. The Court will deny this request because "a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are … without merit." *Stanford v. Parker*, 266 F.3d 442, 460–61 (6th Cir.2001) (citing *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994)); *see also* 28 U.S.C. § 2254(e)(2).

█ Finally, Petitioner moved for summary judgment. In this motion, Petitioner argues that since this Court struck Respondent's untimely answer from the record, Petitioner is entitled to summary judgment because Respondent has effectively failed to respond to his petition. The Court will not grant Petitioner's motion for summary judgment because to do so would be tantamount to granting Petitioner a default judgment, which is relief that is unavailable in habeas corpus proceedings. *Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.1970), *superseded on other grounds by statute as stated in, Cobb v. Perini*, 832 F.2d 342 (6th Cir.1987); *Lemons v. O'Sullivan*, 54 F.3d 357, 364–65 (7th Cir.1995) ("Default judgment is an extreme sanction that is disfavored in habeas corpus cases."); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir.1987) ("a default judgment is not contemplated in habeas corpus cases").

## VII. Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for the writ of habeas corpus [docket entry 1] is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to amend [docket entry 7] is **GRANTED** to the extent stated *supra* in this Order.

**IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing [docket entry 8] is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's motion for summary judgment [docket entry 25] is **DENIED.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **THIRTY (30) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a*

*COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **TWENTY (20) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**