## A01A1111. JACKSON v. THE STATE.
(555 SE2d 835)

RUFFIN, Judge.

On February 3, 1992, a jury found Willie Jackson guilty of possession of cocaine with intent to distribute and possession of marijuana. Over six years later, the trial court granted Jackson's request for an out-of-time appeal. Jackson subsequently filed a motion for new trial, which the trial court denied. Proceeding pro se, Jackson now appeals, arguing that he was forced to trial without an attorney, denied effective assistance of counsel, excluded from a critical stage of the proceedings, and denied his rights to due process and a public hearing.[1] For reasons that follow, we affirm.[2]

1. Jackson argues that the trial court erred in forcing him to trial without counsel. The record shows that less than one week before trial began, Jackson moved to relieve his court-appointed counsel, public defender Terry Everett, from the case and requested a new attorney. At a January 30, 1992 hearing on the motion, Jackson stated that he did not want Everett as his attorney because, in his words, she "conspired with [the assistant district attorney] the last

---

[1] The trial court appointed two different attorneys to represent Jackson on appeal. Dissatisfied with both attorneys, Jackson requested that he be allowed to proceed pro se. The trial court granted Jackson's request.

[2] In criminal appeals, the State is required, as appellee, to file an appellate brief. See Court of Appeals Rule 13. Despite this requirement, the State failed to file a brief in this case. This practice is so frequent that perhaps the Court should begin to enforce its contempt authority for violation of this rule. The filing of a brief is required to assist the Court in reaching the correct decision.

time to put me in jail." He further indicated that he would not participate in the upcoming trial.

Noting that Jackson "waited so long" to file the motion to relieve, the trial court told Jackson that trial would begin "with or without" him. The court then relieved Everett from the case, but explained to Jackson that he would not receive new counsel: "[Y]ou still understand that you've got two options: Either I can get Ms. Everett back, or you can travel on your own." Jackson responded that he would "travel on [his] own." The court further stated:

> [B]y relieving Ms. Everett or not accepting her representation . . . I know you don't agree with this, and you've got this on the record, that you want another attorney, you do understand, though, that because I'm not going to appoint another attorney, other than Ms. Everett at this late date, that in doing so, you are going to be going to trial without an attorney there to counsel you and answer your questions and represent you.

Jackson responded that he understood. Although the trial court appointed an attorney to assist him, Jackson represented himself throughout the trial.

An indigent defendant is "entitled only to reasonably effective assistance of counsel, not counsel of his own choosing," and whether to grant a request to replace one court-appointed counsel with another falls within the trial court's sound discretion.[3] As we have found, "[i]f the defendant does not have a good reason for discharging his court-appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se."[4] Furthermore, "the functional equivalent of a knowing and voluntary waiver of appointed counsel" results when a defendant uses trial counsel's removal and the request for new counsel "as a dilatory tactic."[5] In that situation, the trial court may conduct the trial with the defendant representing himself.[6]

We find no error in the trial court's decision to proceed at trial with Jackson representing himself. To justify Everett's removal, Jackson asserted that she had "conspired" with the assistant district attorney when she represented Jackson on prior charges. Jackson admitted, however, that he prevailed on one of those charges at trial,

---

[3] (Punctuation omitted.) *Oliver v. State*, 246 Ga. App. 32, 36 (2) (538 SE2d 837) (2000).
[4] *Jefferson v. State*, 209 Ga. App. 859, 861 (1) (434 SE2d 814) (1993). See also *Bryant v. State*, 268 Ga. 616, 617 (2) (491 SE2d 320) (1997) (citing *Jefferson*).
[5] (Punctuation omitted.) Id.
[6] Id.

and he presented no evidence to support his conspiracy theory. Moreover, given the timing of Jackson's request for new counsel, the trial court could reasonably conclude that Jackson "was [trying] to use the discharge and employment of . . . counsel as a dilatory tactic," which constituted a knowing and voluntary waiver of appointed counsel.[7]

The record further shows that Jackson received ample warning about the consequences of removing Everett from the case. The trial court informed Jackson that if he refused to proceed with Everett, he would go to trial without an attorney to advise him, answer his questions, and represent him. At the hearing on Jackson's motion for new trial, Everett testified that she also explained the dangers of self-representation to Jackson:

> I . . . told him that this was a fairly complex case, there were issues that I thought a non-lawyer would have some problems with. And at that point in time talked him into letting me stay on the case because I indicated to him that I was sure probably what the Judge was going to do was indicate that he doesn't get to pick and choose his attorney, that he could either represent himself or get whatever counsel that the Court had appointed.

Jackson understood that by refusing to continue with Everett, he was choosing to proceed without representation. Under these circumstances, Jackson "knowingly and intelligently waived his right to counsel after he was made aware of the dangers of self-representation."[8]

2. In three enumerations of error, Jackson asserts that he received ineffective assistance of counsel during the pretrial proceedings, when Everett and another public defender represented him. To succeed on this claim, Jackson must show that counsels' performance during the preliminary proceedings was deficient and that the deficiency prejudiced his defense.[9]

In violation of Court of Appeals Rule 27 (c) (2), Jackson has presented no argument or citation of authority to support these enumerations of error. Nevertheless, we will exercise our discretion to address Jackson's claims, to the extent we are able to discern them. From the statement of facts in his brief, it appears that the allegedly deficient performance concerns the affidavit investigating officers used to obtain a search warrant in this case. According to Jackson, the affidavit was "void of both date and signature," and thus

---

[7] Id. See also *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000).

[8] Id.

[9] *Potter v. State*, 273 Ga. 325-326 (540 SE2d 184) (2001).

procedurally defective. In Jackson's view, pretrial counsel should have objected to the affidavit at his probable cause hearing and the hearing on his motion to suppress evidence seized during the search.

The record does not support Jackson's challenge to the search warrant affidavit. At the suppression hearing, the State entered into evidence a copy of the original affidavit, which, as shown on its face, was signed and dated in the presence of a magistrate. Defense counsel noted at the hearing that, up to that point, she had seen only unsigned copies of the affidavit. In response to counsel's comment, the executing officer explained that he made those copies for his file before he spoke with the magistrate and signed the affidavit. He further testified that the original affidavit submitted to the magistrate included the date and his signature.

Jackson has pointed to no evidence that police procured a search warrant in this case with an unsigned affidavit. To the contrary, the record contains a copy of the signed and dated affidavit, as well as the executing officer's testimony acknowledging his signature. Given this evidence, we cannot find counsel deficient in failing to object to the affidavit.[10] Furthermore, the record shows that defense counsel actually raised the affidavit issue at the suppression hearing. At that hearing, counsel challenged the search warrant's overall validity and questioned the officer about the unsigned copies of the affidavit. Jackson may disagree with the trial court's ultimate conclusion that the affidavit and the search warrant were valid.[11] Nevertheless, he has not shown any deficiency in his attorneys' performance during the pretrial proceedings.

3. In a separate enumeration of error, Jackson asserts that the State violated his due process rights when it "knowingly and intentionally entered the alleged original search warrant and supporting affidavit into evidence." Although Jackson's brief includes no argument or citation of authority supporting this enumeration of error, it apparently involves the "unsigned" search warrant affidavit. As discussed above, however, the record shows that the executing officer properly signed and dated the affidavit. Accordingly, we discern no constitutional violation in the State's use of the original affidavit or search warrant as evidence.

4. In two enumerations of error, Jackson argues that the trial court violated his constitutional right to a public hearing. He asserts that the trial court improperly held the January 30, 1992 hearing on

---

[10] See *Johnson v. State*, 236 Ga. App. 61, 65 (3) (b) (510 SE2d 918) (1999) ("It is not deficient to fail to assert a frivolous objection.").

[11] From the evidence presented at the suppression hearing, the trial court, as factfinder, was authorized to find the affidavit valid. See *Dodgen v. State*, 247 Ga. App. 453 (1) (543 SE2d 814) (2001) (trial court sits as trier of fact at hearing on motion to suppress).

his motion to relieve counsel in chambers. He further claims that the court erred in conducting the hearing on his motion for new trial in a "makeshift courtroom" at the Houston County jail, because "[t]he public cannot walk freely off the streets into the jail."

Even if the location of these hearings could be viewed as improper, we find no error. Jackson has not cited any record references showing that he objected to the location of either hearing, and our review of the hearing transcripts reveals no objection. "As a result, there is no basis to support his claim that the trial court violated his constitutional right to a public trial. Objections not raised at trial cannot be raised for the first time on appeal, as they are deemed waived."[12]

5. Next, Jackson claims that "[t]he trial court erred by excluding [him] from the January 30, 1992 hearing when the court held a conversation with counsel who represent[ed] one of the defendants who [was] arrested and charged along with [him]." The record shows that, following the hearing on his motion to relieve counsel, Jackson was removed from the court's chambers. At that point, the trial court apparently considered appointing attorney William Jerles either to defend Jackson or help him during the trial. As Jerles began discussing the situation with the court and Everett, he realized that he represented one of Jackson's co-defendants and thus could not participate in Jackson's defense.

A criminal defendant has a right to be present "at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."[13] As defined by our Supreme Court, "a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way."[14]

Pretermitting whether such a conference could ever be a "critical stage," we cannot conclude on this record that the colloquy between the trial court and an attorney the court considered appointing to aid Jackson qualified as a critical stage in the proceedings. The discussion did not implicate Jackson's rights, defenses, or privileges, and it had no effect on the outcome of the case. Instead, the conversation simply established that Jerles could not participate in Jackson's defense. Given the limited scope of this conference, we find no constitutional error.[15]

---

[12] (Punctuation omitted.) *Garren v. State*, 220 Ga. App. 66, 67 (3) (467 SE2d 365) (1996).

[13] (Punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001).

[14] (Punctuation omitted.) Id.

[15] Id. See also *Ferrell v. State*, 261 Ga. 115, 122 (12) (401 SE2d 741) (1991) (pretrial conference at which trial court questioned an attorney about "whether he could be retained and could represent the defendant" was not a critical stage).

6. Finally, Jackson asserts that Elizabeth Lane, the attorney who represented him at his motion for new trial hearing, was ineffective. Yet again, Jackson has provided no clear argument or citation of authority to support this enumeration of error. From the statement of facts in his brief, however, it appears that Jackson claims Lane failed to establish that several transcripts were incorrect or had been altered, failed to subpoena Jerles to testify at the motion for new trial hearing, "negated" or removed the ineffective assistance of pretrial counsel claim from his motion for new trial, and "conspired" with the State to hold the new trial hearing at the Houston County jail.

This appeal is Jackson's first opportunity to assert that Lane, who initially represented him on appeal, was ineffective at the motion for new trial stage. We generally remand such claims to the trial court for an evidentiary hearing.[16] Remand is not necessary, however, if " 'it appears as a matter of law that [Jackson] cannot satisfy the two-prong test to establish ineffectiveness of counsel.' "[17] As discussed below, none of the errors allegedly committed by Lane materially affected the outcome of the proceedings in this case. These alleged errors, therefore, do not support reversal.[18]

(a) At trial, an investigating officer testified that police seized a significant amount of money from Jackson. The officer further testified that drug dealers often carry large amounts of cash on them and have no legitimate employment. According to Jackson, the officer then improperly placed Jackson's character into issue by testifying that Jackson told police that he was not employed. On appeal, Jackson claims that this improper testimony was deleted from the trial transcript, and he contends that Lane should have proven that someone altered the transcript.

A reasonable reading of the trial testimony shows that the transcript actually contains the allegedly deleted testimony. Asked why he considered the money seized from Jackson significant in *this case,* the officer testified:

> [M]ost people want to [know] when I go to get their money off of them, why are you taking my money. And I tell them, you know, because drugs have been seized and you have the money on you. Usually I let them go ahead and offer an excuse. I ask, where are you employed at and typically I get the same response which is the same response [sic] which is *he was not employed.*[19]

---

[16] *Setser v. State*, 233 Ga. App. 822, 824 (2) (505 SE2d 798) (1998).

[17] Id.

[18] See id. at 825.

[19] (Emphasis supplied.)

On cross-examination, Jackson asked the officer: "[W]hen you asked me a question when did I tell you that I wasn't employed?" The officer responded: "During the time that I had contact with you there in the hallway, sir." The officer thus testified that Jackson made a statement about being unemployed. That testimony has not been removed from the transcript, as Jackson claims.

Furthermore, even if the testimony was transcribed incorrectly, the trial judge clearly recognized that the officer testified about Jackson's statement. After the officer's testimony, the trial court expressed concern about "the alleged statement that [Jackson] made to [the officer] . . . to the effect that [Jackson was] not employed." As shown by the transcript, Jackson moved for a mistrial based upon the officer's testimony. The trial court did not grant a mistrial, but gave a curative charge instructing the jury "to disregard in its entirety any testimony that [the officer] made concerning any alleged statements made by Mr. Jackson."

Jackson has made no effort to show — or even articulate — how any errors in the transcript prejudiced his defense. The trial judge took action to cure any impropriety in the officer's testimony, and Jackson has not enumerated the trial court's action, or its refusal to grant a mistrial, as error. As a matter of law, Lane's failure to determine whether the transcript was "altered" did not materially affect the outcome of this case.[20]

(b) Jackson also claims that Lane should have established that the January 30, 1992 hearing transcript erroneously indicates that he had not yet been arraigned. According to Jackson, he was arraigned on January 17, 1992. Regardless of Jackson's arraignment date, we find no ineffective assistance of counsel here. Once again, Jackson has provided absolutely no basis for concluding that this alleged error in the hearing transcript affected the outcome of the proceedings.[21]

(c) Jackson contends that, although the January 30, 1992 hearing transcript states that he was absent during part of the hearing, he actually attended the entire proceeding. In Jackson's view, Lane should have raised this discrepancy with the trial court.

According to the transcript, Jackson was removed from the hearing after the court discussed the motion to relieve with Jackson and counsel. The trial court then had a brief conversation with Jerles about possibly participating in Jackson's defense. Elsewhere in his appeal, Jackson argues that the trial court erred in excluding him from this discussion with Jerles. By his own admission, therefore,

---

[20] See id.
[21] See id.

Jackson was not present during the entire proceeding, as the transcript correctly shows. Furthermore, even if the transcript erroneously reported his absence, Jackson has made no effort to explain how that alleged error prejudiced his defense.[22]

(d) Similarly, no prejudice resulted from Lane's failure to subpoena Jerles to testify at the motion for new trial hearing. As discussed in Division 5, the trial court's conversation with Jerles did not violate Jackson's constitutional rights. Accordingly, Jerles' absence from the hearing did not affect the outcome of the proceedings.

(e) We find no merit in Jackson's assertion that Lane "negated" his ineffective assistance of pretrial counsel claim from his motion for new trial. The trial court held a full hearing on Jackson's new trial motion, including his claim that Everett and another public defender provided him ineffective assistance during the pretrial proceedings. At that hearing, both Lane and Jackson questioned Everett and the other public defender. The record completely undermines Jackson's claim that Lane "negated" part of his motion for new trial.

(f) Finally, Jackson alleges that Lane "conspired" with the State to hold the hearing on his motion for new trial at the Houston County jail. He has not even tried to explain, however, how the location of this hearing possibly affected the outcome of the proceedings. Like Jackson's other allegations, this claim presents no basis for reversal.[23]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 25, 2001.

Willie B. Jackson, *pro se.*
*Kelly R. Burke, District Attorney*, for appellee.