Harry C. JOHNSON, Petitioner,

v.

Paul RENICO, Respondent,

No. CIV. 03–CV–40185–FL.

United States District Court,
E.D. Michigan,
Southern Division.

April 21, 2004.

Harry Johnson, Ionia, MI, pro se.

Laura G. Moody, Brenda E. Turner, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Harry C. Johnson, ("petitioner"), presently confined at the Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his conviction on one count of possession with intent to deliver more than 50 but less than 225 grams of cocaine, M.C.L.A. 333.7401(2)(a)(iii); M.S.A. 14.15(7401)(2)(a)(iii); and one count of possession with intent to deliver marijuana, M.C.L.A. 333.7401(2)(d)(iii); M.S.A. 14.15(7401)(2)(d)(iii). For the reasons stated below, petitioner's application for writ of habeas corpus shall be denied.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Kent County Circuit Court.

Police executed a search warrant at the Residence Inn in Kentwood, Michigan on October 19, 1998. The first officer to enter the motel room observed petitioner and his girlfriend, Tanesha Hines, running from one room towards another room past the top of the steps. Police recovered a plastic bag containing another plastic bag which contained marijuana, sixteen sandwich bags, and a scale from the toilet tank in the motel bathroom. Police had observed petitioner walking out of this bathroom. Police also discovered a small plastic baggy containing crack cocaine in a pair of blue jeans found between the bed and the wall. Hines informed the police that the jeans were hers. Police also found a vest lying on the other side of this bed. Police recovered five baggies containing seventy-nine grams of cocaine from this vest. Hines told the police that she had seen petitioner wear this vest several days earlier. This cocaine was valued at $ 16,-000.00. Police also found a pair of black fleece pants, inside of which were a pair of fatigue pants. Inside of these fatigue pants police recovered a pager, identification, and a key. The identification belonged to Cory Colbert. Police located several items of clothing and a wallet with the identification for a Douglas Johnson in a closet in the downstairs bedroom. Police

learned that this hotel room had been rented out by a man named Louis James.

Petitioner and Hines were arrested. Petitioner told the police his name was James Thomas. When petitioner was booked at the police station, he informed the police that Louis James was his uncle. One of the officers also went to the Kent County Jail and reviewed the booking records for Cory Colbert. Over defense objection, the officer testified that the county jail's records indicated that Cory Colbert was admitted to the jail on September 11, 1998 and was still incarcerated at the jail on October 17, 18, and 19, 1998. This officer also spoke with Cory Colbert, who verified this information.

Tanesha Hines testified that she went to the Residence Inn on October 19, 1998, because petitioner called her and asked her to come over to the motel to visit with him. Hines and petitioner were smoking marijuana on the bed when the police raided the motel room. Hines denied telling the police that she had seen petitioner pick a bag up off the dresser and run towards the motel room's bathroom at the time of the raid. Hines denied telling the police that she had seen petitioner wearing the vest that the cocaine was recovered from.

On cross-examination, Hines claimed that the prosecutor and the detective in charge of the case had spoken with her on the previous day and had attempted to get her to say something which was untrue. However, Hines denied being intimidated or threatened in any way. Hines admitted that she became emotional and left the room crying after speaking with the prosecutor and the detective, because they were not happy with the answers that she gave them, telling her that her answers were not the same as the ones that she had given the police on the night of her arrest. When Hines was asked about the vest by the prosecutor and the detective, she informed them that she thought that petitioner actually had been wearing an olive jumpsuit and not the vest. Hines indicated that petitioner was wearing the same jumpsuit at his trial that he wore at the time of his arrest.

Detective O'Brien was recalled. O'Brien indicated that Hines had told her at the time of her arrest that she had seen petitioner pick a plastic bag up off the dresser and run towards the motel room's bathroom at the time of the raid. Hines had also told O'Brien that she had seen petitioner wearing the vest where the cocaine had been found the previous Sunday. Hines also informed the police that she and petitioner had been at the motel room since the day before the police raid.

Petitioner testified that he was visiting his girlfriend at the motel room for five or six hours. Petitioner admitted smoking marijuana, but denied renting the room or selling narcotics. Petitioner denied possessing the cocaine recovered from the vest. Petitioner admitted that Douglas Johnson was his brother and that his brother's identification had been found in the closet of the downstairs bedroom of the motel. Petitioner admitted that Louis James was his uncle.

Petitioner's conviction was affirmed on appeal. *People v. Johnson*, 225867, 2001 WL 1606841 (Mich.Ct.App. December 14, 2001); *lv. den.* 467 Mich. 852, 649 N.W.2d 79 (2002). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Whether the trial court's numerous prejudicial evidentiary errors, coupled with the trial court's evident lack of impartiality, denied Mr. Johnson a fair trial.

II. The prosecutor's numerous errors in closing argument denied defendant a fair trial.

III. Whether defendant was denied effective assistance of counsel when coun-

sel failed to object to [the] instruction on impeachment of credibility with criminal history; [and] failed to examine transcripts for error before allowing jury to examine transcripts.

IV. Whether prosecution engaged in improper conduct by threatening witness Hines [the] day before her testimony in this trial, in an attempt to have Ms. Hines perjure herself.

V. Whether defendant is being denied time reduction under PA 670, do (sic) to trial court's error?

## II. *Standard of Review*

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's

case. *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

## III. *Discussion*

### A. Claim # 1. The Confrontation Clause claim.

Petitioner first claims that his right of confrontation was violated when the trial court permitted Detective O'Brien to testify about information that she had received from petitioner's and Cory Colbert's booking records. The Michigan Court of Appeals rejected this claim, finding that these booking information sheets were properly admitted pursuant to the business records exception to the hearsay rule found in M.R.E. 803(6). *People v. Johnson*, 2001 WL 1606841, **2–3. The Michigan Court of Appeals further found that petitioner's booking information sheet was admissible as a party opponent admission pursuant to M.R.E. 801(d)(2)(A). *Id.* at *2.

The Court initially notes that to the extent that petitioner is contending that the state trial court improperly determined that these statements were admissible under Michigan law, he would not be entitled to habeas relief on such a claim. What is or is not hearsay evidence in a state court trial is governed by state law. *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir.1997); *Diaz v. Curtis*, 2000 WL 1769571, * 7 (E.D.Mich. October 31, 2000). In this case, the Michigan Court of Appeals determined that information from petitioner's and Colbert's booking information sheets was properly admitted under the business records exception to the hearsay rule and further held that petitioner's statements were also admissible as the

admission of a party opponent. A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. *See Maynard v. Lockhart,* 981 F.2d 981, 986 (8th Cir.1992). Any claim that the trial court improperly admitted this evidence as an exception to the hearsay rule is therefore noncognizable in federal habeas review. *See e.g. Cathron v. Jones,* 190 F.Supp.2d 990, 996 (E.D.Mich.2002)(petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights).

■ The Court further notes that the Michigan Court of Appeals did not explicitly address petitioner's Confrontation Clause claim in its opinion. When a state court finds hearsay evidence admissible under a state-law hearsay exception, but does not explicitly consider the hearsay's admissibility under the Confrontation Clause, a federal habeas court should review the state court decision by assessing whether it was reasonably supported by the record and whether its legal analysis is constitutionally sound. *See Woodward v. Williams,* 263 F.3d 1135, 1140 (10th Cir. 2001).

■ The Confrontation Clause does not require that no hearsay evidence be introduced against a criminal defendant. *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). At the time of petitioner's conviction and direct appeal, the United States Supreme Court held that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when:

1. the evidence falls within a firmly rooted exception to the hearsay rule; or

2. it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

Thus, at the time of petitioner's trial and direct appeal, certain types of hearsay were considered admissible if the declarant was unavailable and the statement bore adequate indicia of reliability. *Bruton v. Phillips,* 64 F.Supp.2d 669, 678 (E.D.Mich.1999).

■ On March 8, 2004, the United States Supreme Court overruled its holding in *Ohio v. Roberts, supra,* and held that out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *Crawford v. Washington,* —— U.S. ——, ——–——, 124 S.Ct. 1354, 1365–74, 158 L.Ed.2d 177 (2004). At the time of petitioner's conviction and direct appeal, however, *Ohio v. Roberts* was still good law. The phrase "clearly established federal law", for purposes of § 2254(d)(1), is the governing legal principle or principles set forth by the United States Supreme Court at the time that the state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A habeas court may therefore look only at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F.3d 524, 530–31 (6th Cir.2001). Because

*Ohio v. Roberts, supra,* was still good law at the time that the Michigan Court of Appeals rendered its decision in this case, this Court must determine whether the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, the Supreme Court's holding in *Ohio v. Roberts.*

▮ The Michigan Court of Appeals indicated that the information contained within both petitioner's and Colbert's booking information sheets was properly admitted under the business records exception to the hearsay rule. The business records exception to the hearsay rule is considered a firmly-rooted exception to the hearsay rule and the admission of any evidence pursuant to this exception does not violate the Confrontation Clause. *Ohio v. Roberts,* 448 U.S. at 65, n. 8, 100 S.Ct. 2531; *United States v. Waters,* 158 F.3d 933, 940–41 (6th Cir.1998); *Perfetto v. Hoke,* 898 F.Supp. 105, 112 (E.D.N.Y. 1995). The admission of information from petitioner's and Colbert's booking information sheets pursuant to the business records exception contained in M.R.E. 803(6) did not violate petitioner's Sixth Amendment right to confrontation.

▮ Petitioner's statement to the police at the time of his booking was also admissible as the admission of a party opponent. When out of court statements which are made by a defendant are admitted as the admission of a party opponent pursuant to M.R.E. 801(d)(2)(A), there is no violation of the Confrontation Clause. *United States v. Zizzo,* 120 F.3d 1338, 1354 (7th Cir.1997); *United States v. Moran,* 759 F.2d 777, 786 (9th Cir.1985); *United States v. Rios Ruiz,* 579 F.2d 670, 676 (1st Cir. 1978); *Avincola v. Stinson,* 60 F.Supp.2d 133, 154 (S.D.N.Y.1999). Therefore, the admission of petitioner's out of court statements at his trial would not violate the Confrontation Clause.

The Court notes that even if the Supreme Court's holding in *Crawford v. Washington, supra,* was controlling in this case, the admission of this evidence would not violate the Sixth Amendment. The Supreme Court in *Crawford* noted that when nontestimonial hearsay is at issue, it would be "wholly consistent with the Framers' design to afford the states flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford v. Washington,* 124 S.Ct. at 1374. The Supreme Court noted that the business records exception to the hearsay rule "covered statements that by their nature were not testimonial." *Id.* at 1367. Because petitioner's and Colbert's statements to the police during the bookings were admitted pursuant to the business records exception, they are by their nature nontestimonial, and their admission would not violate the holding in *Crawford v. Washington, supra.*

Petitioner further contends that the trial court erred when it permitted Detective O'Brien to testify that she had spoken with Cory Colbert the night before trial and he had indicated that he had been incarcerated at the Kent County Jail since September 11, 1998. The Michigan Court of Appeals concluded that the admission of Colbert's statement to Officer O'Brien was harmless error, in light of the fact that Colbert's incarceration had already been proven by properly admitted evidence. *People v. Johnson,* 2001 WL 1606841, *3.

▮ A confrontation clause error is subject to harmless error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Alder v. Burt,* 240 F.Supp.2d 651, 676 (E.D.Mich. 2003). The standard for showing harmless error on collateral review is "considerably less favorable" to a habeas petitioner than

the standard which is applied on direct review. On direct review, before a federal constitutional error can be held harmless, the court must be able to declare that the error was harmless beyond a reasonable doubt. However, the harmless error test for collateral review is different. A federal court can grant habeas relief only if the trial error had a substantial and injurious effect or influence upon the jury's verdict. *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir.2002)(*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Under this standard, a habeas petitioner is not entitled to habeas relief unless he or she can establish that the trial error resulted in "actual prejudice." *Id.* Thus, a federal habeas court, in reviewing a state appellate court's harmless error determination, can grant habeas relief only if a habeas petitioner carries the burden of showing that a confrontation clause error had a substantial and injurious effect or influence on the jury's verdict. *Bulls v. Jones*, 274 F.3d 329, 335 (6th Cir.2001); *Alder v. Burt*, 240 F.Supp.2d at 676.

■ In this case, any error in the admission of Colbert's hearsay statement was harmless, because the information contained in it was brought before the jury through other admissible forms of evidence. *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir.1999). Petitioner is therefore not entitled to habeas relief on his first claim.

### B. Claims # 2 and # 4. The prosecutorial misconduct claims.

The Court will consolidate petitioner's second and fourth claims because they are interrelated.

■ When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355–56 (6th Cir.1993). Because this case is a habeas case and is not a direct appeal, the inquiry into this issue is less stringent. *Millender v. Adams*, 187 F.Supp.2d 852, 875 (E.D.Mich.2002). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra*, 4 F.3d at 1355–56.

In his second claim, petitioner contends that the prosecutor engaged in misconduct during closing argument when he waved papers purporting to be Colbert's booking records from the jail even though the records themselves were never admitted into evidence. The Michigan Court of Appeals rejected petitioner's claim that the prosecutor's conduct deprived petitioner of a fair trial, by noting that even though Colbert's booking records were not introduced into evidence at trial, the officer testified that she had reviewed Colbert's booking records which showed that Colbert had been incarcerated since September 11, 1998. The Michigan Court of Appeals further noted that the jury was instructed to consider only the sworn testimony and ex-

hibits introduced at trial and that the lawyers' arguments and statements were not evidence. Lastly, the Michigan Court of Appeals noted that there was no indication that the jurors were able to discern the contents of the papers that the prosecutor waved in the air. *People v. Johnson,* 2001 WL 1606841, *4.

■ It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir.2000)(internal citations omitted).

■ In the present case, any improper insinuation by the prosecutor during closing argument that the papers that he was waving were Colbert's booking records was harmless, in light of the testimony from Detective O'Brien that she had reviewed Colbert's booking records and that they established that Colbert had been incarcerated since September 11, 1998. *See e.g. United States v. Neal,* 27 F.3d 1035, 1051 (5th Cir.1994)(prosecutor's alleged misconduct of allowing government witness to improperly display to the jury a pouch containing a syringe and pills, which were seized from defendant at the time of his arrest but not admitted into evidence, did not constitute reversible error, where the witness had already testified that such items had been seized from the defendant); *Perez v. Jones,* 2004 WL 192820, *8–9 (E.D.Mich. January 26, 2004)(any improper display of adult videos and magazine which had been seized from petitioner's house but not admitted into evidence was harmless, in light of the testimony from several witnesses at trial, including petitioner, that petitioner owned adult videos and magazines). Additionally, the judge instructed the jury that evidence consisted only of the sworn testimony of witnesses and any exhibits that had been admitted into evidence and advised the jury that the lawyers' arguments were not evidence. A jury must be presumed to have followed a trial court's instructions. *See Washington v. Hofbauer,* 228 F.3d at 706. Because the trial judge informed the jury that the lawyers' arguments were not evidence, federal habeas relief is not warranted. *See Byrd v. Collins,* 209 F.3d at 532–33.

In his fourth claim, petitioner contends that he was deprived of a fair trial because the prosecutor and the detective threatened and intimidated Tanesha Hines to attempt to get her to commit perjury. The Michigan Court of Appeals rejected this claim, noting that Hines testified at trial that the prosecutor did not threaten or intimidate her and there was no indication that Hines committed perjury. In fact, the Michigan Court of Appeals noted that Hines's testimony actually benefited petitioner, because she testified that she never saw petitioner wear the vest which contained the cocaine. *People v. Johnson,* 2001 WL 1606841, *6.

■ Prosecutorial actions which are aimed at discouraging defense witnesses from testifying on a defendant's behalf deprive a defendant of his right to due process. *United States v. Pierce,* 62 F.3d 818, 832 (6th Cir.1995)(*citing to Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972)). Police actions which intimidate witnesses from testifying may also be attributable to the state in its prosecution. *Guerra v. Collins,* 916 F.Supp. 620, 626 (S.D.Tex.1995). However, even where a defendant can prove prosecutorial misconduct which amounts to substantial interference with a witness, such misconduct will not result in a new trial if it is harmless. *United States v. Foster,* 128 F.3d 949, 953 (6th Cir.1997)(*citing to Bank of Nova Scotia v. United States,* 487 U.S. 250, 255–56, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)(additional citations omitted)). A defendant who claims that he was denied the due

process of law through government intimidation of defense witnesses must establish, as a "threshold matter", that the actions of the government "worked to deprive him of a witness who would have testified on his behalf." *Wynne v. Renico*, 279 F.Supp.2d 866, 888 (E.D.Mich.2003)(*quoting United States v. Stewart*, 820 F.2d 370, 375 (11th Cir.1987)).

Petitioner's claim fails for two reasons. First, petitioner has presented no evidence, that the prosecutor and the detective actually threatened or intimidated Hines. Hines testified at trial that she had not been intimidated or threatened. Conclusory allegations do not state a claim of prosecutorial misconduct. *See Gregg v. Scully*, 657 F.Supp. 257, 259 (S.D.N.Y. 1987). More importantly, assuming that the prosecutor and the detective attempted to threaten or intimidate Hines into not testifying for petitioner, any such threats were harmless in light of the fact that Hines testified favorably for petitioner. *Wynne v. Renico*, 279 F.Supp.2d at 888. In light of the fact that Hines was not dissuaded from testifying favorably for petitioner, there is no due process violation and petitioner is therefore not entitled to habeas relief on his fourth claim. *Id.*

### C. Claim # 3. The ineffective assistance of counsel claims.

Petitioner next contends that he was deprived of the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing,

the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such performance prejudiced his defense. *Id.*

### 1. Failure to object to an erroneous jury instruction.

Petitioner first alleges that his trial counsel was ineffective for failing to object to the trial court's erroneous jury instruction that the jury could consider petitioner's prior assault with intent to do great bodily harm conviction to determine his credibility. Petitioner contends that this instruction should not have been given because under Michigan law, only a felony which contains an element of dishonesty, false statement, or theft can be admitted for impeachment purposes and the crime of assault with intent to do great bodily harm does not contain any of those elements.

The Michigan Court of Appeals agreed that the trial court erred in instructing the jury that this assault conviction could be used to determine petitioner's credibility. However, the Michigan Court of Appeals further noted that the prosecutor did not use this assault conviction to impeach petitioner's credibility. Instead, petitioner had introduced this conviction into evidence during the defense case to explain why he had given the police a false name at the time of his arrest. The Michigan Court of Appeals further ruled that petitioner was unable to show that he was prejudiced by counsel's failure to object to this instruction, because it was clear that the trial court's intent in giving this instruction was to prevent the jury from

using petitioner's prior assault conviction to find him guilty of these charges. *People v. Johnson*, 2001 WL 1606841, *5.

 The prejudice question, for purposes of an ineffective assistance of counsel claim, "is essentially the same inquiry as made in a harmless-error analysis." *Arnold v. Evatt*, 113 F.3d 1352, 1362 (4th Cir.1997). In *United States v. Malasanos*, 472 F.2d 642, 644–45 (7th Cir.1973), the Seventh Circuit held that the giving of an instruction on impeachment by a prior conviction did not warrant reversal, notwithstanding the fact that the defendant's prior conviction was too old to have been admitted against him, where the defendant's prior conviction was not put before the jury in the form of an impeaching question by the prosecutor, but was part of the defendant's direct testimony to show lack of intent. The Seventh Circuit further concluded that the giving of such an instruction was harmless because the instruction merely reflected on the defendant's credibility, but at the same time instructed the jurors that the prior conviction could not be used as evidence that the defendant committed the crime charged. *Id.*

 In the present case, the giving of this erroneous jury instruction by the trial court was harmless error and petitioner was therefore not prejudiced by counsel's failure to object to the giving of this instruction. Petitioner's prior assault conviction had not been used by the prosecutor to impeach petitioner's credibility, but had been admitted by the defense to explain petitioner's use of an alias at the time of his arrest. Secondly, while this instruction informed the jury that they could use this prior assault conviction to determine petitioner's credibility, the instruction also informed the jury that this prior conviction could not be used as substantive evidence to determine petitioner's guilt to this offense. Finally, the trial court's erroneous

instruction that the jury could consider petitioner's prior assault conviction to determine his credibility was harmless error, because petitioner's credibility was already called into question by some of the evidence at trial, and thus, his credibility was not compromised only by this erroneous jury instruction. *See People v. Ortiz*, 249 Mich.App. 297, 312–13, 642 N.W.2d 417 (2001).

In this case, petitioner cannot affirmatively demonstrate that but for his counsel's error in failing to object to the improper impeachment instruction, the outcome of the case would have been different. Therefore, any error by counsel in this regard does not require the issuance of a writ of habeas corpus. *Knapp v. White*, 296 F.Supp.2d 766, 782 (E.D.Mich.2003).

**2. Failure to review the trial transcripts for typographical errors before the transcripts were sent into the jury room.**

 Petitioner next claims that his trial counsel was ineffective for failing to review the trial transcripts for typographical errors before they were sent into the jury room upon the jurors' request. Petitioner claims that the typographical error involves what petitioner was wearing at the time of his arrest. Ms. Hines and two police officers both testified that petitioner was wearing a black jumpsuit at the time of his arrest. However, later during Hines's testimony, the transcript states that she indicated that petitioner was wearing an olive jumpsuit at the time of his arrest. Petitioner claims that this was a typographical error which prejudiced him, because it would have led the jury to believe that petitioner had more than one jumpsuit at the motel and would bolster the prosecution's theory that petitioner had been staying for a prolonged period at the motel.

The Michigan Court of Appeals rejected this claim, finding the presence of an olive jumpsuit at the motel to be "of little significance" in light of other evidence, including Hines's testimony, which established petitioner's prolonged presence at the motel. *People v. Johnson,* 2001 WL 1606841, *5.

In the present case, petitioner is not entitled to habeas relief on this claim, because he has failed to show that he was prejudiced by counsel's failure to object to the alleged typographical error in the transcript. *See e.g. Jackson v. State,* 252 Ga. App. 157, 162–63, 555 S.E.2d 835 (Ga.App.2001)(failure of counsel, who represented defendant on new trial motion, to determine whether the trial transcript had been altered did not establish ineffective assistance of counsel, where the defendant failed to articulate how the transcript errors prejudiced him). In this case, there was abundant evidence linking petitioner to this motel room. The motel room had been taken out in petitioner's uncle's name. The identification of petitioner's brother was found in the downstairs bedroom of the motel room. Tanesha Hines indicated that she and petitioner had been at the motel for one day prior to the raid. In light of this evidence, the fact that the jury may have erroneously believed that petitioner may have had more than one jumpsuit at the motel would have added little to the prosecutor's case. Furthermore, Hines had testified at trial that petitioner was wearing the same jumpsuit at trial, which was black, that he had been wearing at the time of his arrest. The jury was therefore aware that petitioner had been wearing this jumpsuit, and not an olive one, at the time of his arrest. Accordingly, petitioner was not prejudiced by his counsel's failure to review the trial transcripts prior to their submission to the jury.

Therefore, petitioner's ineffective assistance of counsel claims are without merit.

**D. Claim # 5. The sentence reduction claim.**

In his final claim, petitioner alleges that he is being denied time reduction against his ten-year minimum sentence for possession with intent to deliver over 50 but less than 225 grams of cocaine, because the judgment of sentence erroneously indicates that petitioner was convicted of a lesser drug offense for which he would not be entitled to such a reduction. Pursuant to 2002 Public Act 670, effective March 1, 2003, a defendant like petitioner who was convicted under M.C.L.A. 333.7401(2)(a)(iii), will be eligible for parole consideration after he or she serves their minimum sentence minus any sentencing credits or after serving five years of the sentence, whatever is less. *See* M.C.L.A. 791.234(12); M.S.A. 28.2304(12). Petitioner claims that he is being denied early parole eligibility because the trial court has failed to correct the judgment of sentence to reflect the correct conviction. Respondent notes that this claim is unexhausted because it has never been raised in the Michigan courts, but alternatively argues that the claim should nonetheless be adjudicated because it is a noncognizable claim.

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F.Supp.2d 725, 744 (E.D.Mich.2002); *aff'd* 2004 WL 435856 (6th Cir. March 4, 2004); 28 U.S.C. § 2254(b)(1)(A)(c). Because pe-

titioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke,* 49 F.Supp.2d 992, 998 (E.D.Mich.1999).

■ There is no constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *see also Board of Pardons v. Allen,* 482 U.S. 369, 377, fn. 8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). Stated more succinctly, there is no federal constitutional right to be paroled. *Gavin v. Wells,* 914 F.2d 97, 98 (6th Cir.1990); *Lee v. Withrow,* 76 F.Supp.2d 789, 792 (E.D.Mich.1999).

■ In Michigan, a prisoner's release on parole is discretionary with the parole board. *Lee v. Withrow,* 76 F.Supp.2d at 792(citing to *In Re Parole of Johnson,* 235 Mich.App. 21, 596 N.W.2d 202, 204 (1999)). The Michigan parole statute therefore does not create a right to be paroled. *Id.; see also Hurst v. Department of Corrections Parole Bd.,* 119 Mich. App. 25, 29, 325 N.W.2d 615 (1982). Because the Michigan Parole Board has the discretion whether to grant parole, a prisoner does not have a protected liberty interest in being paroled prior to the expiration of his or her sentence. *Canales v. Gabry,* 844 F.Supp. 1167, 1171 (E.D.Mich. 1994); *Hurst,* 119 Mich.App. at 28, 325 N.W.2d 615. M.C.L.A. 791.233, Michigan's parole statute, does not create a protected liberty interest in parole, because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result. *Janiskee v. Michigan Dep't of Corrections,* 932 F.2d 968, 1991 WL 76181, *1 (6th Cir. May 9, 1991) (citations omitted). As a result, petitioner does not "have a suffi-

cient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard,* 611 F.2d 136, 137 (6th Cir.1979). Where a prisoner has no state created liberty interest in being paroled, he or she may not challenge the procedures used to deny him or her parole. *See Johnson v. Tyszkiewicz,* 2001 WL 278172, * 4 (E.D.Mich. February 28, 2001); *Thomas v. Morgan,* 109 F.Supp.2d 763, 768 (N.D.Ohio 2000). Because petitioner had no protected liberty interest in parole, he has no right to expect the parole board to follow state procedural rules as a matter of federal due process. *McCoy v. Grayson,* 2001 WL 902618, * 2 (E.D.Mich. June 29, 2001)(citing to *Gavin v. Wells,* 914 F.2d at 98). As mentioned above, petitioner has no liberty interest in being paroled in Michigan. Where an inmate has no legitimate expectation of, and thus no liberty interest in, receiving parole, a parole board's failure to set an inmate's release date in accordance with parole guidelines does not give rise to a due process claim. *Parisie v. Morris,* 873 F.Supp. 1560, 1562 (N.D.Ga.1995). Accordingly, petitioner is not entitled to habeas relief on his fifth and final claim.

## IV. *ORDER*

Accordingly, the Court **DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within **TWENTY-ONE (21) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002)("*We do encourage petitioners as a matter of prudence to move*

*for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.*")(emphasis added). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.